**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0604n.06

**No. 10-5846**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PAULA B. BROWN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LEXINGTON-FAYETTE URBAN | ) | EASTERN DISTRICT OF KENTUCKY |
| COUNTY GOVERNMENT, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

FILED
*Jun 12, 2012*
LEONARD GREEN, Clerk

Before: DAUGHTREY, MOORE, and McKEAGUE, Circuit Judges.

Martha Craig Daughtrey, Circuit Judge.    Plaintiff Paula Brown appeals from the district court's order of summary judgment entered in favor of the defendants in this employment discrimination suit, charging retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e - 2000e-17, and the intentional infliction of emotional distress under state law.  The district court held that Brown had failed to establish a *prima facie* case under Title VII and the elements of Kentucky's applicable tort law. Although the record before us suggests that the merits of the plaintiff's retaliation claim are – at best – tenuous, we have no doubt that she was able to establish the easily-met burden of a *prima facie* case and that, as a result, the district court's ruling on that issue cannot be upheld.  Indeed, this record illustrates the inherent risk in limiting analysis to the

*prima facie* stage of Title VII litigation. It thus becomes necessary to reverse summary judgment on that portion of Brown's retaliation cause of action that focuses upon her suspension and referral for psychological evaluation and remand that matter to the district court. However, because the plaintiff failed to allege the sort of outrageous conduct on the part of the individual defendants that is necessary to support a claim of intentional infliction of emotional distress, we affirm that portion of the district court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

At all times relevant to this litigation, Paula Brown, an African-American woman, was employed by the Lexington-Fayette Urban County Government, having been initially hired in 2001. By May 2005, she had been given a raise and promoted to the position of "staff assistant senior" in the Division of Building Inspection. In that position, Brown was charged with the responsibility of "provid[ing] timely professional service to customers purchasing Electrical and Mechanical Permits," "follow[ing] the required policies and procedures in obtaining approval for leave," "tak[ing] and follow[ing] directives from supervisor(s) and management," and "perform[ing] all the assigned job duties of the Electrical/Mechanical Section Staff Assistant Sr. in a timely and efficient manner according to established policies, procedures and standards."

Brown alleged that, throughout her tenure with the division, she experienced problems with unequal or unreasonable distribution of assigned tasks and with unequal application of established disciplinary procedures. What is clear from the appellate record,

however, is the fact that Brown also had an employment history of hostile confrontations with her co-workers and supervisors. For example, in November 2004, the Division of Human Resources filed a complaint against the plaintiff for threatening another employee. Additionally, in April 2006, "[a]n antagonistic conversation was initiated by [Brown] in front of several employees regarding secretary's day," and in June 2006, the plaintiff was given an oral warning after she admitted initiating a verbal confrontation with a co-worker in front of others.

On the other hand, while serving under the supervision of defendants Dewey Crowe, George Dillon, and Stephanie Northington, Brown complained to an employee-assistance program specialist about "[b]ullying behavior, including aggression and intimidation, on the part of her supervisors" and "[w]orkplace retaliation by her supervisors." Specifically, Brown alleged that in January 2007, Northington, the plaintiff's immediate supervisor, shook a pencil in Brown's face while yelling at her menacingly. On another occasion, "Northington confined her in a storage closet by physically blocking the door, while shouting a stream of demands for compliance with her authority." According to a co-worker, in the summer of 2007, when Brown was confined to a wheelchair after an injury, Dillon instructed the co-worker "not to assist Plaintiff in any way, no matter what . . . [and] stated that they would not make accommodations for [Brown]."

In 2008, Brown continued to complain about harassing treatment. In March, for instance, she claimed to "have been subjected to different terms and conditions of

employment in that [she was] required to put [her] vines inside [her] cubicle and take down [her] personal signs [she] displayed." That same month, she fell from a rolling step stool while standing on it "to adjust her screen over her workspace" and hit her back on her desk. Even though rules and regulations of the Kentucky Occupational Safety and Health Program required that all such workplace injuries be recorded on "an OSHA 300 log," the defendants failed to include Brown's injury in the government's report. The plaintiff thus filled out an employee grievance form in which she sought to hold defendants Bryant, Dillon, and Crowe "accountable for Unethical behavior of falsifying, signing & filing this Legal Document without allowing [her] the opportunity to have any input on it or to even review it for accuracy."

In early April 2008, Brown filed charges with the Equal Employment Opportunity Commission (EEOC) and with the Lexington-Fayette Urban County Human Rights Commission, claiming discrimination based upon her race and sex. In part, those charges claimed that Brown had not been promoted to the position of team leader in June 2007, and, in part, complained of disparate treatment in being required to keep the vines of her plants within her own cubicle and in being required to remove "personal signs" displayed within her workspace.

Tensions between Brown and Dewey Crowe, the division director, reached a head on May 1, 2008, when, according to Crowe:

> The Plaintiff was given clear instructions to assist a customer and to complete the [heating, ventilation, and air conditioning] permits for which the customer was waiting. The Plaintiff left the customer unattended at the counter, left her workstation, and engaged in a verbal confrontation with [Crowe]. [Crowe] informed the Plaintiff to return to her workstation, and complete the work for the waiting customer, but instead the Plaintiff left the premises . . . . Other employees finished the customer's request and they also completed several unfinished permits that the Plaintiff was previously instructed to complete.

Brown disputes Crowe's version of the events of that day, however. In a filing in the district court, she set out her version of the incident:

> In her attempt to more quickly complete at least ten forms, she asked a co-worker (who was sitting idly, waiting for the phones to ring), to number the forms while she continued to fill in the contents. Crowe began smacking his fist and shouting, "I told you to stop asking other people to do your work for you."

In any event, following the incident Brown lodged a grievance against Crowe and was placed on a 30-day administrative leave, apparently with full pay. Upon returning from that leave, however, Crowe suspended Brown for 40 hours, without pay, as a result of the alleged insubordination demonstrated during the May 1 incident.

Furthermore, about the time of the altercation with Crowe, the plaintiff requested a transfer to another department within the government. The request was denied, and Brown was told that her options included returning to her existing job or resigning. Brown allegedly responded, "I won't resign my job. I'll keep on working even if the stress you all are putting me under kills me." Interpreting that remark as an expression of suicidal

ideation, the defendant government initiated a mandatory referral of the plaintiff to the employee assistance program. Even though the psychologists and psychiatrists who evaluated Brown beginning on July 7, 2008, concurred that the statement made by the plaintiff had been taken out of context and did not necessarily indicate Brown's intent to harm herself, Brown was not released for a return to work until August 18, 2008 and was not permitted to return until October 13, 2008. During the period of evaluation, moreover, Brown received no pay until her lawyer became involved in the situation and secured for the plaintiff back pay covering the time she was undergoing counseling. While participating in the counseling sessions, Brown filed a second EEOC complaint, this one "charging her employer with retaliation for having filed the April 2008 EEOC discrimination complaint." The EEOC issued Brown a right-to-sue letter on September 19, 2008.

Even after the plaintiff returned to work, she continued to complain that she was treated differently from other employees. Her supervisors countered by claiming that Brown's insubordination and inefficiency interfered with her job performance. They also denied under oath that they had retaliated against Brown for filing various complaints. Finally, Brown was suspended from employment on December 31, 2008, pending a hearing before the Civil Service Commission, a hearing that resulted in termination of the plaintiff's employment effective May 7, 2009.

In the meantime, Brown filed this lawsuit in federal court, initially seeking a preliminary injunction restoring her to her position within the Lexington-Fayette County

Urban Government. The district court denied the request for injunctive relief and further ordered the plaintiff to show cause why her complaint should not be dismissed for failure to identify a theory upon which her case could be based. In an effort to comply with that request, Brown filed an amended complaint adding additional causes of action. The defendants responded with a motion for summary judgment, which the district court granted in part, reserving only Brown's claim against the government for retaliation and the claim against the individual defendants for intentional infliction of emotional distress. Eventually, the district judge concluded that the plaintiff had failed to raise a genuine issue of material fact regarding a causal connection between her protected activity and any adverse employment action by the defendant employer, and dismissed the retaliation action. The district court also held that the plaintiff had failed to meet the standard for maintaining a tort action under state law and dismissed the claim for intentional infliction of emotional distress. Following the district court's denial of Brown's motion to alter or amend the judgment, the plaintiff filed this appeal. Although the notice of appeal purports to contest the district court's initial grant of partial summary judgment to the defendants, the subsequent order dismissing the remaining claims, and the denial of the motion to alter or amend, Brown's briefs on appeal challenge only the dismissal of the retaliation and intentional-infliction-of-emotional-distress claims.

**DISCUSSION**

**Standard of Review**

We review *de novo* the grant of summary judgment by a district court. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. A non-moving party cannot withstand summary judgment, however, by introduction of a "mere scintilla" of evidence in its favor. *See Ciminillo*, 434 F.3d at 464.

**Retaliation Claim**

Brown contends that the district court should not have granted summary judgment to Lexington-Fayette County on her claim of retaliation because she adduced sufficient evidence to raise at least a factual dispute that would preclude a finding in the government's favor. Lexington-Fayette County, on the other hand, insists that the district court correctly concluded that Brown failed to establish that she suffered an adverse employment action and that, even if she had, that adverse action was not related to the exercise of any protected activity.

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that:

> (1) [s]he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took a materially adverse action against the plaintiff or subjected the plaintiff to severe and pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the materially adverse action.

*Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009). In this case, Lexington-Fayette County does not contest the fact that Brown's filing of charges with the Kentucky Occupational Safety and Health Program and with the EEOC constituted protected activity. Additionally, the defendant does not dispute that it was aware of the existence of those filings. As indicated above, however, Lexington-Fayette County does maintain that Brown suffered no adverse employment action and that the plaintiff has established no causal connection between any such adverse action and the filing of her administrative complaints.

At the *prima facie* stage of the litigation, however, the burden upon the plaintiff is minimal. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). "[I]t 'is a burden easily met,'" *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987), and "is not onerous." *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir. 1984). "All that is required of plaintiff at the *prima facie* stage is to demonstrate that [s]he has a case, that the evidence is on h[er] side." *Avery Dennison Corp.*, 104 F.3d at 861. Furthermore,

in conjunction with the standards for review of summary judgments, we must view all evidence in the light most favorable to the non-moving party – here, the plaintiff.

In this appeal, Brown asserts that her EEOC complaints filed in April 2008 and in July 2008, as well as her complaint to the Kentucky Occupational Safety and Health Program in June 2008, led Lexington-Fayette County to retaliate against her by suspending her without pay in June and in July through October of 2008 for psychiatric evaluations, and by eventually terminating her employment on December 31, 2008. Neither party disputes that termination of employment is an adverse action that satisfies the third prong of the *prima facie* analysis applicable to a Title VII retaliation case. Lexington-Fayette County nevertheless attacks the plaintiff's retaliation claim by contending that the July-through-October suspension cannot be considered an adverse employment action because, even though the suspension was initially without pay, the employer later paid Brown the salary she had not received during the suspension. According to the defendant's argument, therefore, because the plaintiff was eventually made whole financially, no adverse employment action occurred.

But, in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the United States Supreme Court rejected just such an argument. In that case, the plaintiff was placed on involuntary leave status without pay for 37 days but later received back pay for that period of time. Faced with an argument that such restitution negated the possibility that the plaintiff could establish an adverse employment action, the Court found to the

contrary, determining that "an indefinite suspension without pay could well act as a deterrent [to protected activity], even if the suspended employee eventually received backpay." *Id.* at 73. Without question, therefore, plaintiff Brown has, in this case, also satisfied the "easily met" burden of demonstrating an adverse employment action, both in regard to her suspension without pay for psychological evaluation and in regard to her termination from employment.

The question remains whether Brown has also satisfied the fourth prong of the *prima-facie*-case analysis by demonstrating a causal connection between her EEOC and Occupational Health and Safety filings and her suspension and termination. As this court has previously noted:

> Causation can be proven indirectly through circumstantial evidence such as suspicious timing. Specifically, this Court has found that temporal proximity between an assertion of Title VII rights and a materially adverse action, is sufficient to establish the causal connection element of a retaliation claim "[w]here an adverse employment action occurs *very close* in time after an employer learns of a protected activity." Where the nexus is not "very close," we have declined to find a causal connection based on timing alone.

*Lindsay*, 578 F.3d at 418-19 (citations and parenthetical explanations omitted).

In this case, Brown filed her various administrative charges against Lexington-Fayette County in April, June, and July of 2008. Her December 2008 termination thus did not occur until between five and eight months after the protected activities. Given the passage of that period of time, as well as the absence of other record evidence that the

termination flowed from the filings with the EEOC and Occupational Safety and Health Program, the plaintiff has failed to establish or even to imply any causal connection between the protected activities and her ultimate termination.

Less than one month after the April EEOC filing, however, the plaintiff was placed on a 30-day administrative leave, with pay, after the confrontation with Dewey Crowe, and was then reinstated, only to be suspended for 40 hours without pay, reinstated again, and promptly referred for psychological counseling for all or part of the next three months. Although the defendant argues that the administrative leave, the 40-hour suspension, and the psychological referral stemmed from an alleged act of insubordination and from the plaintiff's reaction to it, Brown counters that Crowe's reaction to an innocent request for assistance prompted the "confrontation" and was an indication of his desire to "get" her, presumably because of her exercise of protected activities. Consequently, viewing the evidence in the light most favorable to the plaintiff, as we are required to do at this juncture in the litigation, we must conclude that the information before the district court arguably supports the inference that Brown's supervisor treated her with exceptional harshness shortly after the initial EEOC filing. The self-serving denial by Lexington-Fayette County and the claim that any discipline was meted out only for insubordination do not establish that the defense version of the events is necessarily accurate. Instead, Brown's presentation of affidavits and other evidence that Crowe, Dillon, and Northington were "out to get" her and that they warned other employees not to associate or assist the plaintiff

creates at least a dispute of fact regarding the motivation of the individual defendants in disciplining the plaintiff and temporarily depriving her of pay.

Similarly, Brown has adduced evidence that, upon her return to work in October after the conclusion of the psychological evaluation period, an unmanageable workload was placed upon her in order to ensure that she could not accomplish the tasks set out for her. Brown alleged that she was ordered to complete her regular work and all the work that had backlogged during her absence, and that she was expected to finish it without assistance and without utilizing overtime. The unreasonableness of that demand was brought to light in the sworn affidavit of Christine Wu, a colleague of the plaintiff, who related that "[f]or the first two weeks after [the plaintiff] was fired . . ., her workload was divided between two full time and three part time employees. The third week after Paula Brown stopped working . . . , Paula's workload was divided between three full time employees."

Without question, the defendant has offered legitimate explanations for the treatment of the plaintiff that have no relation whatsoever to her filing of the EEOC and Occupational Safety and Health complaints. A plaintiff's burden in establishing a *prima facie* case of Title VII retaliation "is not onerous," however. Thus, the fact that Brown has adduced contrary evidence suggesting a possibly improper motive for the suspension and initially-unpaid psychological referral is sufficient to undermine the district court's summary judgment ruling premised upon a failure to establish a *prima facie* case.

- 13 -

**Intentional Infliction of Emotional Distress Claim**

In her second issue on appeal, Brown contends that she also put forth sufficient evidence to create a dispute of material fact and thus preclude summary judgment for the individual defendants on the plaintiff's state-law claim of intentional infliction of emotional distress. The plaintiff's burden of establishing a *prima facie* case of such a tort is, however, extremely difficult. Kentucky courts have instructed that, in order for a plaintiff to recover for the intentional infliction of emotional distress, she must show that: "(1) the wrongdoer's conduct was intentional or reckless, (2) the wrongdoer's conduct was outrageous and intolerable, (3) there is a causal connection between the conduct and the emotional distress, and (4) the emotional distress suffered is severe." *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. Ct. App. 2005) (citation omitted).

"[N]ot every upset plaintiff can recover for emotional distress," however. *First and Farmer's Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 143 (Ky. Ct. App. 1988). Rather, Kentucky courts have looked to the commentary to section 46 of the *Restatement (Second) of Torts* for guidance in defining the type of acts that will justify tort recovery. That commentary provides:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been

found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 789 (Ky. 2004) (citing *Restatement (Second) of Torts* § 46(1) cmt. d (1965)). Thus, Kentucky courts have allowed recovery for intentional infliction of emotional distress in instances in which a defendant:

(1) harassed the plaintiff "by keeping her under surveillance at work and home, telling her over the CB radio that he would put her husband in jail and driving so as to force her vehicle into an opposing lane of traffic"; (2) intentionally failed to warn the plaintiff for a period of five months that defendant's building, in which plaintiff was engaged in the removal of pipes and ducts, contained asbestos; (3) engaged in "a plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring [plaintiff] to his knees"; (4) committed same-sex sexual harassment in the form of "frequent incidents of lewd name calling coupled with multiple unsolicited and unwanted requests for homosexual sex"; (5) was a Catholic priest who "used his relationship [as marriage counselor for] the [plaintiff] husband and the wife to obtain a sexual affair with the wife"; (6) agreed to care for plaintiff's long-time companion-animals, two registered Appaloosa horses, and then immediately sold them for slaughter; and (7) subjected plaintiff to nearly daily racial indignities for approximately seven years.

*Stringer*, 151 S.W.3d at 789-90 (footnotes and citations omitted).

Under this strict standard, "[m]ere termination clearly does not rise to the level of outrageous conduct required to support an IIED claim." *Benningfield*, 183 S.W.3d at 572. Indeed, as this court has held in a case seeking recovery under similar Ohio tort law, "an

employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).

Here, Brown attempts to bolster her tort claim by highlighting the fact that some of the individual defendants appeared to attempt to isolate the plaintiff at work, counsel other employees not to associate with Brown, and require the plaintiff to obtain permission anytime she left her work station. Although such actions may be immature, petty, and destructive of an efficient working environment, as a matter of law they do not come close to approaching the level of outrageous behavior necessary to support a claim for intentional infliction of emotional distress under established Kentucky law.

## CONCLUSION

For the reasons set out above, we conclude that the district court's dismissal of that portion of Brown's retaliation claim that involves her suspension and referral for psychological evaluation must be REVERSED and the case REMANDED for such further proceedings as are necessary. We AFFIRM the district court's judgment dismissing the plaintiff's claim for intentional infliction of emotional distress.