NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0166n.06

No. 12-5470

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 13, 2013**
DEBORAH S. HUNT, Clerk

RAMONA CHARMEL HILLMAN,           )
                                  )
        Plaintiff-Appellant,      )
                                  )       ON APPEAL FROM THE
v.                                )       UNITED STATES DISTRICT
                                  )       COURT FOR THE WESTERN
SHELBY COUNTY,                    )       DISTRICT OF TENNESSEE
                                  )
        Defendant-Appellee.       )
                                  )
_____   )

BEFORE:  SUHRHEINRICH, MOORE and GIBBONS, Circuit Judges.

**SUHRHEINRICH, Circuit Judge**.  Plaintiff Ramona Hillman ("Hillman") appeals the

district court's grant of summary judgment to Defendant Shelby County Government ("Shelby

County"), in this action alleging retaliation in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e, *et seq.*, and sex discrimination in violation of the Tennessee Human Rights Act

("THRA"), Tenn. Code Ann. § 4-21-101, et seq.  For the following reasons, we AFFIRM.

**I.  Background**

On June 18, 2002, Hillman and twenty-one other female correctional officers at the Shelby

County Division of Corrections ("DOC")[1] filed a Title VII action against DOC, alleging that they

were subjected to a sexually hostile work environment as a result of being assigned to supervise male

inmates who were exposing themselves.  The lawsuit was ultimately dismissed on July 5, 2007.

_____

[1]DOC is owned by Defendant Shelby County.

In late 2002, while the lawsuit was pending, Hillman began having trouble with her boyfriend's wife, Shirley Abram.[2] Abram made several harassing phone calls to the DOC. In January 2004, Hillman went to George Little, the Director of DOC, expressing her concern with Abram's behavior. On January 21, 2004, a private process server attempted to serve Hillman with court papers while she was on duty at the DOC. Later that day, Little sent Hillman a memo stating that no substantive charges had been made against her and that he would not authorize an investigation of her behavior. However, Little cautioned Hillman to handle her business matters "so that it [does] not interfere with institutional operations." He reiterated: "Please be certain that your personal affairs do not reflect poorly on your professional endeavors."

Two weeks later, Abram accused Hillman of assault, and an arrest warrant was issued for Hillman in Mississippi. Hillman was arrested on February 9, 2004. Abram was also arrested and charged. In accordance with county policy, Hillman notified DOC's Chief of Security, Anthony Alexander, ("Alexander") of her arrest on February 9, 2004. The next day, February 10, 2004, Lieutenant Edgar Hampton ("Hampton") notified Hillman that the DOC would be conducting an internal investigation to determine whether she had violated any DOC policies. Hillman was not suspended while the criminal charge was pending.

On May 5, 2004, Hillman was found guilty of "Assault, Physical Fear" in violation of Miss. Code Ann. § 97-3-7(1)(c) by the Mississippi Municipal County Court. On May 28, 2004, Lieutenant Stephanie Sumlar ("Sumlar") issued Hillman a Notice of Proposed Major Discipline ("*Loudermill* Notice")[3], for violating DOC's internal policies and procedures. On June 8, 2004, Hampton

---

[2]Abram was not an employee of DOC.

[3]*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

conducted a *Loudermill* hearing. On June 11, 2004, Hampton issued his findings and recommendation to terminate Hillman.

Sumlar and Hampton were the only two persons conducting disciplinary investigations. Sumlar prepared Hillman's *Loudermill* packet. Sumlar testified that she obtained some of the documents from Hampton. Sumlar stated that she did not verify the accuracy of the documents. Sumlar said that she knew Hillman, had worked with her and indirectly supervised her, and never had any problems with Hillman. Sumlar knew about the 2002 lawsuit, because she had attended depositions as a representative of the DOC, but Sumlar denied knowing that Hillman was a plaintiff until Sumlar attended Hillman's deposition in that case.

Hampton said that Hillman's 2004 assault conviction was the reason for the *Loudermill* Notice and hearing. Hampton felt that Hillman's behavior did not meet DOC standards and reflected negatively on the DOC. Hampton stated that the DOC's Standards of Conduct policy requires employees to conduct themselves in a responsible or professional manner, and that Hillman was not meeting that standard "by virtue of becoming involved in and entangled in these situations where threats . . . were being levied with her involvement with Ms. Abram." Hampton further noted that the Shelby County Handbook states that "an individual will be respectable as it relates to [her] dealings with the public," and that Hillman was not meeting that standard. Hampton remarked that Hillman had violated a memorandum of understanding between Shelby County and the correctional officers' union for similar reasons.

After the *Loudermill* hearing, Hampton recommended to Alexander, that Hillman be terminated.

Hampton testified that he knew that Hillman had appealed her assault conviction, but did not await the results of the appeal, and that he did not know that her conviction was later reversed on appeal.

Hampton shared an office with Sumlar from 2003 until 2006, yet testified that he knew nothing about the 2002 lawsuit. However, he was aware that a female officer, who was not part of the 2002 lawsuit, was charged with stabbing her husband but was not discharged. Further, Hampton met with Abram at an off-site location but did not obtain a sworn affidavit from Abram as required by the Memorandum of Understanding between the union and the DOC.[4] Hampton also acknowledged that Hillman's *Loudermill* packet included numerous disciplinary documents that should not have been included. Hampton further admitted that Hillman's personnel file contained only three minor infractions as of 2004.

On August 17, 2004, Hillman filed a complaint with the EEOC, alleging that she was terminated for filing the 2002 lawsuit.

On August 26, 2004, the Shelby County Civil Service Merit Review Board upheld her termination.

In the meantime, Hillman appealed the assault conviction to the County Court of Desoto County Mississippi. On January 14, 2005, all charges against her were dismissed. Hillman notified the DOC of the dismissal, but the DOC did not reinstate her.

On October 29, 2004, the EEOC issued Hillman a right to sue letter.

---

[4]The Memorandum of Understanding provides:

Before an investigation is begun based on a citizen complaint of a nature which, if proved, could result in the employee's suspension or discharge, the Shelby County Correction Center shall request a citizen sign a sworn affidavit clearly stating the allegation.

On January 24, 2005, Hillman filed her original complaint (subsequently amended).  On October 31, 2007, the district court dismissed the case on the basis of issue preclusion.  On October 16, 2008, this court reversed and remanded.  The case was transferred to a different district court.

On March 23, 2012, the district court granted summary judgment to Shelby County.  Initially, the court commented that while it "ordinarily" relied on the parties' statements of undisputed fact, here the statements "primarily address[ed] Plaintiff's disciplinary history" and the *Loudermill* hearing, which pertained to pretext rather than Plaintiff's prima facie case.  For this reason, the court opted to "lay out the facts as indicated by the deposition testimony of Plaintiff, Lt. Sumlar, and Lt. Hampton." *Id.*  The district court concluded that Hillman met the first three elements of her prima facie retaliation case in that (1) she engaged in Title VII protected activity, namely the 2002 lawsuit involving a hostile work environment claim; (2) Shelby County knew about it; and (3) she was terminated in 2004, suffering an adverse employment action.

However, the district court held that Hillman failed to present sufficient evidence of causation.  First, as to Sumlar, the district court noted that Hillman was terminated two years after the 2002 lawsuit began and did not present evidence to link her termination to the lawsuit.  Further, Hillman failed to pinpoint when Sumlar became aware of the lawsuit (at least until Hillman's deposition).  In any event, even if Sumlar knew of the lawsuit when she compiled the *Loudermill* Notice, this knowledge would not satisfy Hillman's burden, especially since Hillman had not submitted evidence that Sumlar failed to follow DOC policies or intentionally included disciplinary matters in the *Loudermill* Notice that should not be included under the defendant's policies and procedures.  The court also found that Sumlar was not responsible for the contents of Hillman's file.  The district court therefore concluded that Hillman had not presented evidence connecting Sumlar's compilation of the *Loudermill* Notice and the 2002 lawsuit.

The district court found that Hampton did not know about the 2002 lawsuit when he made his recommendation, that Hillman offered no evidence to the contrary, and that Alexander merely affirmed Hampton's recommendation and also did not know about the 2002 lawsuit. The district court rejected Hillman's unsupported assertion that she was retaliated against because of her involvement in the 2002 lawsuit.

Similarly, the district court held that Hillman satisfied the first three elements of a sex discrimination claim under the THRA, but failed to show that comparable persons received better treatment. Specifically, the court found that Hillman had not shown that she was similarly situated to other DOC employees who had been arrested but not fired, because Hampton was not the decisionmaker for any of those employees. Nor did Hillman show that Sumlar was involved in the preparation of their *Loudermill* notices or even whether any such notice was prepared.

This appeal followed.

## II. Standard of Review

A district court's grant of summary judgment is reviewed de novo. *Johnson v. Econ. Dev. Corp.*, 241 F.3d 501, 509 (6th Cir.2001). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A 'genuine issue of material fact' is one which, if proven at trial, would result in a reasonable jury finding for the non-moving party." *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 597 (6th Cir.1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). To survive summary judgment, the non-moving party must present probative evidence. *Anderson*, 477 U.S. at 249-50. All justifiable inferences are to be drawn in the non-moving party's favor. *Id.* at 255. The trial court must not weigh the evidence and determine the truth, but simply determine whether there is a genuine issue for trial. *Id.* at 249.

### III. Substantive Standards

### A. Title VII Claim

Title VII prohibits discrimination against an employee on the basis of sex, 42 U.S.C. § 2000e-2(a)(1), as well as "because [the employee] has . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter," 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must establish that: "(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008).

If the plaintiff meets this burden, the burden of production shifts to the employer to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual, which she may do by showing that (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate plaintiff's termination; or (3) the proffered reason was insufficient to motivate plaintiff's discharge. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

### B. THRA Claim

"Because of the commonality of purpose between the Tennessee Human Rights Act and the federal statutes," the Tennessee courts apply the same analytical framework as used with Title VII claims. *Dennis v. White Way Cleaners, L.P.*, 119 S.W.3d 688, 693 (Tenn. Ct. App. 2003). To establish a prima face case of gender discrimination under Title VII, a plaintiff must show that "'(1)

she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably.'" *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir.2004)). We apply the same analysis to a claim for gender discrimination under the THRA. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 714 (6th Cir. 2006).

## IV. Analysis

### A. District Court Weighing

Hillman contends that the district court ignored both parties' statements of undisputed facts, conducted its own inquiry, weighed the evidence, and drew inferences favorable to the movant, contrary to law. As noted, the district court is not tasked with weighing the evidence at the summary judgment stage, but must simply determine if there is a genuine issue of fact for trial. *See Anderson*, 477 U.S. at 249. In her reply brief, Hillman concedes that the December 1, 2010 amendments to the Federal Rules of Civil Procedure clarify that, while not obligated to do so, district courts "may consider other materials in the record" not otherwise cited by the parties. Fed R. Civ. P. 56(c)(3). Thus, the district court did not err in reading the depositions of Hillman, Sumlar, and Hampton. Furthermore, it is clear from the court's opinion that it merely summarized their testimony and did not weigh it or assess their credibility. Instead, the district court simply fulfilled its obligation to determine "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 252 (internal quotation marks and citation omitted).

## B. Wrong Standard of Proof

Next, Hillman argues that the trial court erred in its statement of law governing the prima facie case of retaliation and further erred in concluding that she had not met her burden of proof as to causation.

Hillman faults the trial court for requiring her to show "sufficient evidence" of causation, when her burden at this stage is only "minimal," citing *Brown v. Lexington-Fayette Urban Cnty. Gov't*, No. 10-5846, 2012 WL 2105366, at *4 (6th Cir. June 12, 2012). Characterizing the burden as "sufficient evidence" or "minimal evidence" does not change the fact that Hillman failed to meet her burden of proof at the summary judgment stage. As part of her prima facie case, Hillman was required to point to evidence of causation sufficient to support a verdict in her favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Hillman's assertion that she was terminated in retaliation for her involvement in the 2002 lawsuit is merely her opinion, and does not suffice to meet her burden under Fed. R. Civ. P. 56.

As the district court properly held, "[c]onclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale*, 519 F.3d at 605. The district court also correctly ruled that because two years had elapsed between the filing of the lawsuit and Hillman's termination, Hillman was required to present some evidence linking the two events. This circuit holds that if the adverse employment action occurs very close in time after an employer learns of a protected activity, temporal proximity alone is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to

establish causality." *Id. See, e.g., Brown*, No. 2012 WL 2105366, at *5-6 (temporal proximity supported an inference of retaliation where adverse employment action occurred less than one month after the plaintiff filed an EEOC charge against her employer; but that second adverse employment action, which occurred roughly eight months after Title VII protected activity, was too remote to support an inference of retaliation).[5]

Hillman claims that the district court assessed only Sumlar's and Hampton's depositions, and ignored her submissions. We disagree, and find that the district court correctly held that Hillman failed to establish causation.

----

[5]Hillman also cited *EEOC v. Avery Dennison Corp.*, 104 F.3d 858 (6th Cir. 1997), as authority to support her contention that the district court required her to meet an unfairly heavy burden of proof. In *Avery Dennison*, the court stated that "the defendant is not entitled to judgment as a matter of law or summary judgment if a plaintiff has proven its *prima facie* case." *Id.* at 861.

In *Whitfield v. Tennessee*, 639 F.3d 253 (6th Cir. 2011), this court clarified *Avery Dennison*:

The *Avery* court . . . was not referring to summary judgment, but rather judgment at trial. 104 F.3d at 861. To survive a motion for summary judgment, the plaintiff need not *prove* that the defendant's proffered rationale is pretextual, as that would be enough proof for summary judgment in favor of the plaintiff. Rather, the plaintiff must prove only enough to create a *genuine issue* as to whether the rationale is pretextual. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir.2007); *Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 576–77 (6th Cir.2006).

At oral argument, Whitfield argued the opposite extreme: that an ADA plaintiff need not produce *any* evidence of pretext to survive a defendant's motion for summary judgment. In Whitfield's view, she need only create a genuine issue of material fact as to the existence of a *prima facie* case in order to defeat a motion for summary judgment and proceed to trial. This is wrong. Because, under the *McDonnell Douglas* framework, an ADA plaintiff bears the burden at trial of proving that the defendant's proffered explanation is pretextual, the plaintiff must be able to show a genuine issue of material fact as to that issue at the summary judgment stage. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548 ("Rule 56(c) mandates the entry of summary judgment ... against a party who fails to ... establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

*Id.* at 260.

## C. Causation

Given the period of time between the protected activity–the filing of the 2002 lawsuit–and Hillman's termination in 2004, Hillman needed to offer additional evidence to establish causation.

First, she points to the fact that Hampton relied on Sumlar's compilation of her disciplinary history, and made no independent review. She also notes that Sumlar testified that she knew Hillman had appealed her conviction, but that she did not include that fact in Hillman's *Loudermill* packet. Even if these facts would have been considered by the DOC, the lack of consideration does not establish that Hillman's termination was truly motivated by her participation in the 2002 lawsuit. Absent more, these facts simply do not establish a causal link between Hillman's termination and the 2002 lawsuit. Hillman also points out that Sumlar was clearly aware of the 2002 lawsuit because she was Shelby County's designated representative in that case, and had attended Hillman's deposition. Again, all this establishes is that Sumlar knew Hampton was a plaintiff in the 2002 lawsuit when she was directed to put together the *Loudermill* packet two years later following Hillman's assault conviction; it does not link Hillman's discharge to her involvement in the 2002 lawsuit.

Hillman contends that Hampton must have known about the lawsuit, since he shared an office with Sumlar, despite his statements under oath to the contrary. She adds that Hampton knew that other officers had been charged with violent crimes but were not disciplined. Hillman also finds it probative that Hampton, who made the decision to terminate her, admitted in his deposition testimony that her *Loudermill* packet contained documents that should have been removed from her official personnel file.

Again, none of these facts create an inference that Hillman was terminated because she participated in a lawsuit filed two years previously. On June 11, 2004, when Hampton made the

decision to terminate Hillman, he knew that Hillman had been found guilty of simple assault. He did not know, and could not have known, that the criminal charge would be later dismissed on appeal and the conviction expunged. He also did not know that her packet contained improper materials. Instead, the facts support the inference that Hillman was terminated because she was convicted for assault. She has failed to demonstrate the existence of a genuine issue of material fact on this question.

Hillman notes that Hampton met with Abram at the Regional Medical Center in Memphis ("MED") "a highly unusual event." However, Hampton in his unsworn statement under penalty of perjury indicated that on November 18, 2003, several months before Hillman's arrest, Alexander instructed him to meet Abram at the MED to receive documents for delivery to Alexander, which turned out to be police reports. Again, while this fact establishes that DOC officials were investigating Hillman's behavior based on reports by the public, it does not show that her ultimate termination was motivated by retaliation.[6]

Hillman also thinks it probative that in his memo dated January 21, 2004, Little stated she was not under investigation. Hillman glosses over the fact that (1) Little wrote the memo the day a private process server attempted service while Hillman was at work; and (2) Little's memo also warned her to conduct her business and personal affairs in a professional, nondisruptive manner. This is not evidence of a retaliatory motive.

Hillman also attempts to meet her burden by pointing to similarly situated employees who allegedly were arrested but not terminated. *See Taylor v. Keith*, 338 F.3d 639, 646-47 (6th Cir. 2003) (finding a genuine issue of fact precluding summary judgment on causation element in

---

[6]Hillman filed a motion to strike Hampton's and Sumlar's affidavits. The district court denied the motion to strike and overruled her objections.

retaliation case where the plaintiffs, who were terminated after allegedly exercising free speech rights, showed that similarly-situated officers who also failed to follow department procedures were not disciplined).

The proper inquiry is whether the other employees are similarly situated in all relevant aspects. *Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 393 (6th Cir. 2008); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). In response to Hillman's interrogatory No. 7, Shelby County identified sixteen employees, including Hillman, who had been disciplined or terminated for violent behavior on or off the job. However, nine of those identified were disciplined before Hampton was assigned to Employee Discipline in October 2003, as part of the "new administration", which had "zero tolerance" for violent behavior on and off the job. Hampton testified that he was not involved in the investigation of, or unaware of the violent behavior and disciplinary actions of the other six employees who were disciplined after October 2003.[7] Although there is no requirement that the same decisionmaker be involved, *see McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005), Hillman offers no evidence demonstrating that Hillman's circumstances were comparable to the other employees. Absent such evidence, Hillman has not established a causal connection between her Title VII conduct and her termination.

### D. THRA Claim

Hillman is female and therefore meets the first element of her prima facie case. Shelby County did not contend that she was not qualified for her position as a correctional officer, so the second element of her prima facie case is also met. Third, she was terminated from her employment with the DOC. However, Hillman did not meet her burden regarding the fourth element of her prima

---

[7]In fact, Hampton testified that while he was in operations, one employee, Nathaniel Freeman, was terminated after being arrested.

case. As discussed above, she failed to show that she was similarly situated to other DOC employees who were arrested but not fired. Summary judgment as to this claim was also proper.

### V. Conclusion

For the foregoing reasons, as well as the reasons stated in the district court's opinion dated March 23, 2012, we **AFFIRM** the judgment of the district court.