NOT RECOMMENDED FOR PUBLICATION
File Name: 13a1023n.06

No. 12-6597

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 11, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PAULA B. BROWN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| LEXINGTON-FAYETTE URBAN COUNTY | ) | THE EASTERN DISTRICT OF |
| GOVERNMENT | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |

Before:  DAUGHTREY, KETHLEDGE, and DONALD, Circuit Judges.

**BERNICE B. DONALD**, **Circuit Judge.**  Plaintiff-Appellant Paula Brown appeals the district court's grant of summary judgment to Defendant-Appellee Lexington-Fayette Urban County Government ("LFUCG") in her employment discrimination suit alleging retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.  This appeal turns on the question of whether Brown has presented sufficient evidence to establish pretext, the third step in the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), circumstantial evidence burden-shifting framework.  Specifically, we must analyze whether, viewing the evidence in the light most favorable to her, Brown has shown circumstances indicating it is more likely than not that LFUCG suspended her and referred her for a medical evaluation for retaliatory reasons, rather than for its proffered legitimate reasons.

Brown initially filed suit against LFUCG and a number of LFUCG employees alleging nine different causes of action. The district court either dismissed or granted summary judgment to LFUCG on all of these claims. Brown previously appealed the dismissal of her Title VII retaliation claim against LFUCG and her state law intentional infliction of emotional distress claim against the individual defendants to this Court. We affirmed the dismissal of the state law tort claim but ruled that the district court erred in holding that Brown had failed to establish a prima facie retaliation claim under Title VII.

After we remanded the case to the district court, LFUCG again moved for summary judgment. The district court granted this motion, finding that the case warranted summary judgment because Brown could not establish that LFUCG's stated reasons for her discharge were likely pretextual. Brown again appeals. For the reasons explained below, we **AFFIRM** the district court's grant of summary judgment to LFUCG.

I.

Paula Brown began working for LFUCG in 2001. In 2007, as a part of departmental reorganization, Brown assumed primary responsibility for heating, ventilation, and air conditioning ("HVAC") permitting, as well as front counter assistance duties. Brown held this position until her termination. As amply demonstrated in the record, Brown felt that her co-workers and supervisors mistreated her. The record also clearly indicates that Brown had a history of hostility and combativeness with her co-workers and supervisors.

In March 2008, Brown filed an Occupational Safety and Health complaint with the Kentucky Department of Labor. On April 3, 2008, Brown filed her first charge with the Equal Employment Opportunity Commission ("EEOC") through the Lexington-Fayette Urban County Human Rights Commission. This charge alleged that, because of her race and sex, Brown had been treated differently from other employees and passed over for promotion.

On May 1, 2008, while a customer waited for her to process a number of HVAC permit forms, Brown had an altercation with a supervisor, Dewey Crowe. According to Brown, the office was understaffed that day, so she asked an idle co-worker, Christine Wu, to help her by numbering the forms as Brown addressed their contents. Brown claims that, although Crowe had not prohibited her from seeking help before, he began shouting about how he had told Brown not to ask others for help, pointing his finger, and slamming his fists. Crowe, however, counters that he had previously instructed Brown to do her own work after watching Brown ask others to do her work for her. Crowe claims he repeatedly instructed Brown to return to her work station and finish the permits herself. Crowe admits that he was aggravated but contends that he never yelled, pointed, or slammed his fist. The parties agree that an argument ensued and that Brown momentarily returned to her workstation before going into Crowe's office to continue the argument. Crowe again told her to return to her workstation and finish helping the customer, but Brown instead went to another employee's office for advice before eventually leaving to file a complaint against Crowe with the Division of Human Resources.

As a result of this complaint, LFUCG placed Brown on thirty days of paid administrative leave.  Upon her return to work, on June 3, 2008, Crowe suspended Brown for forty hours without pay for insubordination—defined in the employee handbook as "direct refusal to obey a supervisor's work-related order or failure to follow directions or instructions"—and inefficiency based on the May 1, 2008 altercation.

Brown requested both a meeting with Leslie Jarvis, Senior Manager in the Division of Human Resources, and an appeal before the Civil Services Commission regarding this suspension.  Brown also requested a transfer to a different department at LFUCG; she was told that she could either remain in her current position or resign.  Brown then began to send emails regarding her mental state  and her work to various coworkers and supervisors.  These emails devolved from coherent, if somewhat odd, messages on June 5 and June 9 to a June 24 missive where Brown stated, among other things, "I will not Resign even if you kill me with Stress" and closed with "I **request** once again for you, SOMEONE to Demand that these Powerful, Godlike, Authorities ***PLEASE*** stop Inflicting **Intentional** Emotional Distress on me.  thank you."

These emails prompted concerns about Brown's mental well-being and ability to work, so, on July 3, 2008, LFUCG's Division of Human Resources referred Brown to the Behavior Medicine Network, its employee assistance program, for a fitness-for-duty evaluation.  After her initial consultation with a Behavior Medicine Network mental health professional, LFUCG placed Brown on leave until a medical professional could determine that it would be appropriate for her to return to work.

On July 7, 2008, while on leave, Brown submitted a second EEOC charge of discrimination alleging that LFUCG retaliated against her by suspending her for forty hours without pay because she engaged in the protected conduct of her filing her first EEOC charge. Brown further alleged that she was being discriminated against based on her age in contravention of the Age Discrimination in Employment Act. This charge listed the relevant dates of discrimination as May 1, 2008 ongoing through July 1, 2008.

Although a psychiatrist cleared Brown to return to work on August 18, 2008, LFUCG did not actually permit Brown to return until October 13, 2008. Brown's return was delayed because LFUCG wanted to speak with her healthcare provider, who was then on vacation, about how to ensure Brown's smooth reentry into the workplace and because some of the provider's suggestions took time to implement. Initially, per LFUCG's standard policy requiring employees to use accumulated leave while out for medical reasons, LFUCG did not pay Brown. After Brown returned to work, LFUCG compensated her for all of her leave time.

Brown returned to work on October 13, 2008. According to Brown, upon her return, she was saddled with an unreasonable workload in an attempt to drive her away. Brown points specifically to the fact that her work had been divided between several full-time employees while she was gone to assert that she was given more work than one person could reasonably do. On December 31, 2008, after continuing on-the-job problems, LFUCG suspended Brown pending termination by the Civil Service Commission for insubordination and inefficiency, failure to provide timely service, rude and unprofessional behavior, and chronic inability and unwillingness to perform the functions

of her position. After a hearing on April 29, 2009, the Civil Service Commission issued an order terminating Brown's employment on May 7, 2009.

## II.

Brown filed her initial complaint in the United States District Court for the Eastern District of Kentucky on December 6, 2008, alleging a host of claims against LFUCG and a number of LFUCG employees. On March 26, 2010, the district court granted partial summary judgment to the defendants on all of Brown's claims other than her Title VII retaliation claim against LFUCG and her state law intentional infliction of emotion distress claims against the individual defendants. The district then court issued an order dismissing Brown's last two causes of action on April 15, 2010. Regarding Brown's retaliation claim, the district court found that Brown failed to connect her EEOC and OSHA complaints to an adverse employment action in order to establish the causation required for a prima facie claim of retaliation under Title VII.

Brown appealed to this Court, which stated: "Although the record before us suggests that the merits of the plaintiff's retaliation claim are—at best—tenuous, we have no doubt that she was able to establish the easily-met burden of a prima facie case and that, as a result, the district court's ruling on that issue cannot be upheld." *Brown v. Lexington-Fayette Urban Cnty. Gov't*, 483 F. App'x 221, 222 (6th Cir. 2012). We also noted that "[w]ithout question the defendant has offered legitimate explanations for the treatment of the plaintiff that have no relation whatsoever to her filing of the

EEOC and Occupational Safety and Health Complaints." *Id.* at 227. We remanded to the district court.

On November 5, 2012, the district court again granted summary judgment to LFUCG on Brown's Title VII retaliation claim. The district court turned to the third phase of the *McDonnell Douglas* burden-shifting framework: whether Brown could raise a genuine issue of material fact as to pretext. The district court found that Brown failed to produce any evidence to support an argument of pretext, reasoning that neither Brown's categorical dismissal of LFUCG's stated reasons for its actions against her as "untrue" nor Brown's reliance on affidavits of questionable relevance and doubtful admissibility raised issues of material fact. On December 6, 2012, the district court denied Brown's motion to alter or amend the judgment. This appeal ensued.

### III.

On appeal, Brown argues that the district court erred in determining that she had not met her burden of demonstrating that LFUCG's stated reasons for its adverse actions against her were pretext for retaliation. Particularly, Brown contends that the district court did not view all the evidence in the light most favorable to her.

### A.

We review de novo a district court's grant of summary judgment using the *Matsushita-Anderson-Celotex* standard. *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We do not weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists, which it must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986) (internal quotation marks omitted). If the moving party satisfies this burden, the nonmoving party may not "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing Fed. R. Civ. P. 56; *Matsushita*, 475 U.S. at 586). A party asserting a genuine issue of material fact must support this argument either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Evidence that is "merely colorable" or "not significantly probative" is insufficient.

*Anderson*, 477 U.S. at 248-52. If there are no disputed material facts, we review de novo whether the district court properly applied the substantive law. *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2003).

B.

Because Brown does not offer any direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for asserting a discrimination claim based on circumstantial evidence applies here. Under that framework, the plaintiff first bears the burden of establishing a prima facie case of retaliation. *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009). We previously held that Brown established a prima facie case of retaliation based on two adverse actions—LFUCG's suspending her for forty hours without pay on June 3, 2008 and LFUCG's referring Brown for a fitness-for-duty exam which resulted in her being placed on leave from July through October 2008. *Brown v. Lexington-Fayette Urban Cnty. Gov't*, 483 F. App'x 221 (6th Cir. 2012).

Because Brown established a prima facie Title VII retaliation case, the burden of production—but not persuasion—shifted to LFUCG to articulate legitimate non-discriminatory reasons for these actions. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir. 2006). As noted in our prior opinion, LFUCG has done so. *Brown*, 483 F. App'x at 227. LFUCG's decision to suspend Brown because of her insubordination during her confrontation with Crowe on May 1, 2008 constitutes a legitimate, non-retaliatory

justification. *E.g. Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013); *Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998). Similarly, LFUCG's decision to refer Brown for a fitness-for-duty assessment that led to her being placed on leave was legitimate and non-retaliatory given the tone and substance of Brown's June 2008 emails. *See Stone v. Board of Dirs. of Tenn. Valley Authority*, 35 F. App'x 193, 200 n.1 (6th Cir. 2002); *Sullivan v. River Valley School District*, 197 F.3d 804, 813 (6th Cir. 1999).

LFUCG's providing non-retaliatory reasons for its adverse actions pushes the *McDonnell Douglas* framework into its third phase, where the Brown must demonstrate by a preponderance of the evidence that these reasons are actually pretext for unlawful discrimination. 411 U.S. at 802; *Abbot v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). To demonstrate pretext and thereby defeat LFUCG's motion for summary judgment, Brown may show that LFUCG's offered reasons for her suspension and referral: (1) had no basis in fact; (2) did not actually motivate LFUCG's conduct; or (3) were insufficient to explain this conduct. *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009). Brown relies on the second method for proving pretext, arguing that LFUCG's stated non-retaliatory reasons for its adverse employment actions did not actually motivate those actions. To demonstrate pretext using this method, Brown must provide "circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." *Russell v. Univ. of Toledo*, 537 F.3d 596, 608 (6th Cir. 2008).

C.

Brown contends that the district court failed to adequately consider the record and did not draw all reasonable inferences in her favor. Brown, however, does not specifically address either of LFUCG's proffered reasons for its actions. Instead, she generally contends that she has produced adequate evidence to indicate that LFUCG harbored a desire to fire her or force her to resign and that its employees systematically tried to drive her away. Brown grounds this argument in four affidavits: her own, along with three from former coworkers John Hoagland, Kim Asher, and Christine Wu. Although these affidavits establish a troubled relationship between Brown and LFUCG and indicate that Brown was not well-liked by some co-workers and supervisors, they do not present sufficient evidence to indicate that Brown more likely than not suffered adverse actions for retaliatory rather than legitimate reasons.

Kimber Asherly and John Hoagland's affidavits suffer from two flaws. First, they are not temporally relevant to Brown's retaliation claim as neither Hoagland nor Asher were employed by LFUCG after 2007. They cannot, therefore, offer meaningful insight regarding whether LFUCG responded to Brown in legitimate or retaliatory ways from May through October 2008. Hoagland's only potentially relevant insight is that Brown's job had been divided into two positions before the reorganization in 2007. The remainder of Asher and Hoagland's affidavits detail statements and conversations indicating that other employees were "out to get" Brown. These statements reveal the other flaw in the affidavits—they are replete with hearsay. *See generally* Fed. R. Evid. 801. The majority of these affidavits are both irrelevant and inadmissible. *See* Fed. R. Evid. 802.

Christine Wu's affidavit is more substantive. Like Hoagland and Asher, Wu offers inadmissible hearsay statements indicating that LFUCG supervisors strongly disliked Brown. Unlike the others, however, Wu is still an employee of LFUCG and was a witness to the argument between Brown and Crowe on May 1, 2008. According to Wu, Crowe was "overly belligerent and threatening" and his reaction was "loud and over-blown." Still, nothing in Wu's affidavit suggests that Brown was not insubordinate during the confrontation. Wu's affidavit does not address Brown's referral for evaluation and subsequent leave.

In her own affidavit, Brown focuses on statements regarding the events on May 1, 2008, which she supplements with testimony from her Civil Service hearing to establish that she eventually went to Human Resources to lodge a complaint after her confrontation with Crowe. Brown argues that this fact eviscerates LFUCG's insubordination justification. Her argument, however, overreaches. Although her filing a complaint with Human Resources does explain why she eventually left work without finishing the HVAC permits, it does not excuse her initially failing to return to her workstation as instructed or her following Crowe into his office to continue the argument—both of which still constitute insubordination.

Turning to the circumstances resulting in her referral for evaluation and eventual leave, Brown discusses facts that she alleges the district court did not consider—her filing an EEOC charge against Crowe on July 7 and her requesting but never having both a meeting with Jarvis and an appeal regarding her suspension—to argue that the district court did not draw all reasonable inferences in her favor. Brown also contends that her June 2008 emails merely expressed

exasperation with Jarvis's perceived unwillingness to assist her. Brown, however, neglects to mention that, although the meeting and appeal did not occur, Jarvis responded to her requests, provided a time frame in which to schedule a meeting, and explained when the next Appeals Board meeting would take place. Further, Brown's reliance on her second EEOC charge and her meeting requests presume what she is required to prove—that LFUCG's proffered reasons for referring her for a fitness-for-duty evaluation were pretext for retaliation.

Brown also contends that the district court assumed the role of the jury by addressing the disputed issue of fact regarding why Brown did not return to work for over a month after the psychiatrist declared her fit. The district court, however, correctly determined that this dispute of fact is contrived, not genuine. Whereas LFUCG has introduced evidence in the form of emails and an affidavit to explain its non-retaliatory reasons for delaying Brown's return, Brown counters this evidence with speculation that the delay must have been retaliatory. Speculation alone cannot create a genuine issue of material fact sufficient to resist summary judgment. *See Anderson*, 477 U.S. at 248-52.

Finally, Brown relies on *Cantrell v. Nissan North America, Inc.*, 145 F. App'x 99 (6th Cir. 2005), to claim that the evidence she asserted in her prima facie case is in-and-of-itself sufficient to create a genuine issue of material fact regarding pretext. In *Cantrell*, an employee with a lengthy history of unexcused absences and disciplinary issues engaged in the protected activity of filing an EEOC charge and was then terminated after a minor infraction. *Id.* at 103-04. We determined that this minor infraction was not "the straw that broke the camel's back" and that Nissan had instead

"simply seized on it as the first available excuse to fire Cantrell after her EEOC filing." *Id.* at 108. The *Cantrell* court recognized that when an employee's prima facie evidence is sufficiently strong, then that same evidence may in some instances be used to rebut the employer's legitimate non-discriminatory reasons. *Id*. at 107-08.

*Cantrell* is distinguishable. Whereas Cantrell presented a particularly robust prima facie case, Brown's case, while sufficient to satisfy the low threshold in the first phase of the *McDonnell Douglas* framework, has been properly characterized by this Court as "at best [] tenuous." *Brown*, 483 F. App'x at 222. Brown's prima facie case rested in large part on the temporal proximity between her protected actions and LFUCG's adverse actions, coupled with her facing a substantial workload upon her return to work. *Id.* at 226-27. This evidence does not give rise to an inference of pretext strong enough to overcome LFUCG's stated reasons for suspending Brown and referring her for evaluation.

Brown has provided reams of evidence suggesting that her co-workers did not like her and likely mistreated her at times. Title VII's anti-retaliation provision, however, does not guard against "petty slights or minor annoyances that often take place at work." *Burlington North & Santa Fey Railway Co. v. White*, 548 U.S. 53, 68 (2006). Rather, to survive summary judgment, Brown must demonstrate "circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." *Russell,* 537 F.3d at 608. She has failed to do so. Outside of inferences and speculation, Brown points to little evidence in the record actually suggesting that LFUCG's

stated reasons for its actions did not, in fact, motivate its actions.  Accordingly, Brown's retaliation

claim falters at the third stage of the *McDonnell Douglas* framework.

IV.

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to

LFUCG.