NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0118n.06

Case Nos. 21-3730/3733

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KEITH KRESZOWSKI,

  Plaintiff - Appellant,

v.

FCA US, LLC (21-3730/3733); UNITED
AUTOMOBILE, AEROSPACE, AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA, LOCAL
12, REGION 2B (21-3730),

  Defendants - Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Mar 15, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

Before: BATCHELDER, GIBBONS, and GRIFFIN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Keith Kreszowski was employed by FCA US, LLC ("FCA") in its Toledo, Ohio automotive manufacturing facility, where he was a member of the Local 12 Region 2B United Automobile, Aerospace and Agricultural Implement Workers of America (the "Union"). Following an incident at work, FCA required Kreszowski to undergo a fitness-for-duty examination and placed him on leave, and the Union did not object. In 2017, Kreszowski sued FCA and the Union, alleging disability discrimination and retaliation. The district court granted summary judgment to FCA and the Union on both claims. In 2019, Kreszowski filed a second suit against FCA, with claims following chronologically from the facts of the 2017 suit. The district court consolidated his cases, then denied Kreszowski's motion for a discovery continuance and granted summary judgment to FCA. Because Kreszowski has not

offered evidence establishing that FCA or the Union illegally discriminated or retaliated against him, we affirm.

**I**

Keith Kreszowski began working for FCA in its Toledo, Ohio automotive manufacturing facility in July 2013 and was a member of the Union.[1] On September 30, 2016, Kreszowski hit the "abort" button to shut down an alignment machine when he perceived that his coworker Ken Sukalo had created a safety hazard by walking away from the machine. This caused production throughout the assembly line to shut down for ten to fifteen minutes. Kreszowski's supervisor, Nichole Banks, spoke to his coworkers about the incident and then issued him a verbal warning for failing to follow safety procedures.

In the conversation with Banks, Kreszowski was admittedly "upset," acknowledging that he had reacted with a "certain level of emotion." 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 184–85. He stated that he did not yell or scream, but that he raised his voice to be "firm" and probably used hand gestures. *Id.* at 185. Kreszowski felt the discipline was unwarranted and was frustrated Banks had spoken to other coworkers about the machine shutdown rather than asking for his "side of the story." *Id.* He told Banks he would contact the Occupational Safety and Health Administration ("OSHA"), stating "with all the safety issues we got here . . . I could call OSHA up; they could come out here today and shut the plant down." *Id.* at 186. In addition to communicating this sentiment to Banks, Kreszowski spoke to the Union Safety Coordinator Rex Maze and team leader Dianna Kurth about his intention to contact OSHA.

---

[1] Because Kreszowski has two cases before us, the appellate and district court dockets are referred to by their respective numbers. "The 2017 case" refers to district court case number 3:17-cv-2371, which is 21-3730 on the appellate docket. "The 2019 case" refers to district court case number 3:19-cv-2989, which is 21-3733 on the appellate docket.

Kreszowski requested and was granted a day off on October 7, 2016, so he could file an OSHA complaint. At 4:10 a.m., Kreszowski sent a text message to Kurth asking for Nichole Banks's last name for his OSHA complaint. Kreszowski then sent multiple text messages at 5:00 a.m. to another plant manager expressing that he was scared to return to work because he felt his health and safety were compromised at FCA and thought that Sukalo was dangerous. Kreszowski filed an OSHA retaliation charge claiming that he was disciplined and harassed because he made an internal complaint about alleged safety issues. OSHA investigated the complaint and ultimately dismissed it without action.

An FCA human resources manager contacted FCA's Corporate Labor Relations Department and reported that Kreszowski exhibited certain concerning behaviors for the facility. Accordingly, the Local Response Team ("LRT"), a group of individuals from FCA and Union leadership, was called to meet. The LRT is a trained group designed to allow management and the Union to work together to address concerns or troubling incidents; it also identifies and refers employees having problems to the Employee Assistance Program ("EAP"). The LRT met with Kreszowski on October 10, 2016, and Kreszowski presented a document outlining concerns about his safety if he returned to work under Banks's supervision and alongside Sukalo. Kreszowski also expressed concern about being subject to retaliation and a hostile work environment. During the meeting, Kreszowski was "excited" and "[a] little nervous," and he recalled using hand gestures and speaking faster and louder. Union representative and LRT member Mark Epley described Kreszowski as "very agitated" and noted he "was slamming his fist on the table [and] seemed almost out of control." 3:17-cv-2371, DE 50-12, Mark Epley Decl., Page ID 633.

At this meeting, Epley asked FCA human resources representative Connie Rubin to remove the discipline from Kreszowski's record, and Rubin agreed to do so. At the end of the meeting,

Rubin said that Kreszowski could return to work. However, Kreszowski informed the LRT that he was not confident about returning to the workplace because he was concerned about Banks and Sukalo creating an abusive work environment. FCA accordingly excused him for the rest of his shift. That evening, Kreszowski contacted Epley and reiterated his concerns about returning to work; he requested an additional vacation day and asked to meet again with the LRT. On October 13, 2016, Kreszowski and the LRT met again. Again, Kreszowski expressed safety concerns with Sukalo that he felt had not been fully investigated and frustration that he had been disciplined while Sukalo had not. He provided the LRT with another document of his concerns, in which he requested relocation to another job assignment and stated, "[t]he frustrations and repetitive actions that have occurred within the group has put myself in [an] emotional state that is detrimental, and I am attempting to eliminate[] that state of mind due to the environmental conditions that exist. I cannot have that continue." 3:17-cv-2371, DE 49-3, Kreszowski October 13, 2016 Letter, Page ID 250–51.

When a member of the LRT asked Kreszowski if he could guarantee that he would not harm someone if he returned to work, Kreszowski "never said [he] would harm anybody," but said he was concerned about the disciplinary repercussions of shutting down a machine and consequently "could end up harming myself or somebody else." 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 198. Epley stopped Kreszowski and told him to choose his words carefully. Kreszowski asked to take a few more days off before returning to work, and the meeting participants verbally agreed that he would go on a personal leave of absence with a return-to-work date of October 24, 2016. That evening, Epley called Kreszowski and notified him that there were concerns about Kreszowski's responses to certain questions during the LRT meeting. The following day, Tonya Tooson (a Union member of the LRT and EAP representative) called

Kreszowski and informed him he would need to complete a fitness-for-duty examination before returning to work.

Kreszowski attended a psychological assessment with Dr. James Knowles on October 19, 2016. Dr. Knowles told Kreszowski that he wanted to see him further before giving him permission to return to work. Kreszowski texted Tooson about his returning to work on October 24, but she called him and informed that he could not return until he had been approved as fit for duty and that he would be on personal leave. Kreszowski disagreed with the characterization of the leave as "personal," as opposed to disciplinary or medical, describing it as a nonconsensual "forced" leave of absence. 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 200–01, 204–05. Meanwhile, FCA entered an absence code to protect his seniority under the collective bargaining agreement.

On October 25, 2016, Kreszowski filed a charge of disability discrimination with the Ohio Civil Rights Commission ("OCRC"). He alleged that FCA discriminated against him because of a perceived disability by disciplining him and subjecting him to different employment terms and conditions by giving him a "forced personal leave of absence" and a "denial of medical leave." 3:17-cv-2371, DE 49-4, OCRC Charge, Page ID 252.

Dr. Knowles and Kreszowski met three more times between October 26 and November 22, 2016. On November 28, 2016, Dr. Knowles sent a final assessment to Jo'Lena Brown, FCA's Corporate Union Relations Specialist, in which he released Kreszowski to return to work and recommended that Kreszowski engage in appropriate treatment and complete anger management classes. Dr. Knowles noted that Kreszowski denied any intention of harming anyone, and that he interacted appropriately for three of their sessions but was uncooperative during the fourth and final appointment. Kreszowski stated his relationship with Dr. Knowles "was adversarial from

day one" because he believed the doctor was deceitful. 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 203–04.

Brown notified Kreszowski that he had been reinstated, and Kreszowski returned to work at FCA on November 30, 2016. Problems arose within six hours of his return: Kreszowski complained to human resources and Brown that he was experiencing a hostile work environment created by Sukalo and other coworkers. Kreszowski continued to worry that there could be retaliatory actions or hostile work conditions directed toward him, and he felt harassed by Sukalo, who ignored him in one instance, and by another coworker who seemed "upset and angry" with him. 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 208–10. Kreszowski continued to raise complaints to both local and corporate FCA management and human resources between December 2016 and February 2017. The complaints escalated into a charge of discrimination against the Union, which Kreszowski filed with the OCRC on February 8, 2017. Kreszowski alleged the Union had denied him representation on "October 13, 2016 and continuing" because of a perceived disability.[2] 3:17-cv-2371, DE 23-3, OCRC 2017 Charge, Page ID 107.

After Kreszowski sent repeated emails to FCA Group's Chief Executive Officer and FCA North America's Chief Human Resources Officer referring to "continued bias" against him, FCA's Equal Employment Opportunity Investigation Compliance Coordinator, Vicki Patterson, contacted Kreszowski to address his concerns. 3:17-cv-2371, DE 54-3, Patterson Decl., Page ID 919. Patterson stated that Kreszowski sent her multiple lengthy emails detailing numerous complaints about the LRT's actions, his Union representation, and matters addressed in OSHA

---

[2] The OCRC investigation culminated in a Letter of Determination finding "no credible information supporting [Kreszowski's] allegation of unlawful activity," and dismissing the matter. 3:17-cv-2371, DE 51-6, OCRC 2017 Letter, Page ID 673.

and OCRC complaints. Patterson explained to Kreszowski that her investigation would be limited to Kreszowski's claim that his supervisor had harassed him in violation of FCA policy. Kreszowski accused Patterson and her office of bias, describing "widespread chronic abuse from your management and union officials within the Toledo Assembly Complex and beyond." 3:17-cv-2371, DE 49-8, Patterson Emails, Page ID 341. Patterson interviewed Kreszowski for more than three hours; she also interviewed Sukalo, Tooson, each member of the LRT, and additional coworkers. Sukalo informed Patterson he had considered retiring from FCA "because of the continued harassment to which Kreszowski subjects him." 3:17-cv-2371, DE 54-3, Patterson Decl., Page ID 921.[3]

In April 2017, FCA laid off Kreszowski and other employees as part of a plant-wide retooling. During this layoff, Kreszowski sent "a couple dozen" emails to FCA officials.[4] The plant was scheduled to resume operation and return employees from layoff in October 2017. However, the volume of Kreszowski's emails and management's ongoing concerns about Kreszowski's behavior culminated in a meeting with corporate human resources managers and FCA's chief medical officer, who determined that a meeting with Kreszowski should be held before he returned to work. Roy Richie, a labor relations manager, met with Kreszowski on October 16, 2017, at the local Union hall. At this meeting, Kreszowski raised concerns about his

---

[3] Patterson conducted her interviews from February to August 2017. On September 6, 2017, she sent a closing letter to Kreszowski informing there had been no violation of FCA's policy. In response, Kreszowski sent multiple emails to Patterson and various FCA and Union officials and executives at the local and corporate levels describing his perceived deficiencies in the investigation.

[4] FCA arranged for Kreszowski's emails to be rerouted to one human resource employee. After he discovered this, Kreszowski began changing email addresses to "get around everything going to Connie Rubin" and continue contacting FCA executives. 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 230.

2016 leave of absence and perceived safety issues; Kreszowski's OSHA and OCRC complaints were also discussed. Kreszowski stated that he believed various human resources employees and Union members had "evil intentions" toward him and that their employment should be terminated before he could return to work as a productive employee. 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 225.

Following this meeting, Richie determined that Kreszowski could not return to work until he completed another fitness-for-duty examination. FCA placed Kreszowski on "company-paid business," a payroll code that ensured his pay would not be interrupted. Richie stated Kreszowski "did not receive that information well." 3:17-cv-2371, DE 52, Roy Richie Dep., Page ID 816. Kreszowski met with Dr. Craig Lemmen on October 30, 2017 for his examination. Dr. Lemmen opined that Kreszowski did "not pose a significant risk of harm to himself or others at the workplace." 3:17-cv-2371, DE 54-2, Lemmen Report, Page ID 915. He also opined, however, that Kreszowski had "a psychiatric problem which interferes with his ability to positively interact with co-workers and supervisors." *Id.* at 916. Dr. Lemmen noted that time off from work would be helpful for Kreszowski to engage in psychotherapy treatment to reduce problematic interactions. *Id.* at 916–17.

On November 13, 2017, Kreszowski filed a second OCRC charge against FCA. He alleged FCA denied him recall from the layoff, forced him onto sickness and disability pay, and forced him to cooperate with the October 2017 fitness-for-duty examination as retaliation for his October 25, 2016 OCRC charge. He formally withdrew the charge in January 2018 to pursue litigation instead.

In accordance with Dr. Lemmen's recommendation, Kreszowski made an appointment with Dr. Kettlie Daniels, who provided certification to FCA so Kreszowski would be covered by

the appropriate medical leave plan. Kreszowski's relationship with Dr. Daniels was not a constructive one; he was under the impression Dr. Lemmen had given Dr. Daniels a treatment plan for him, while she believed she was to conduct a medical evaluation. Kreszowski did not trust Dr. Daniels and believed she was colluding with FCA by "start[ing] a treatment plan with falsehoods." 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 229. Dr. Daniels diagnosed Kreszowski with an adjustment disorder and provided certification for medical leave. Following the diagnosis, their relationship deteriorated. Kreszowski accused Dr. Daniels of participating in an FCA conspiracy meant to "project hostility and hardship upon [him]" and called her "an incompetent professional that is doing harm." 3:17-cv-2371, DE 49-16, Kreszowski Emails, Page ID 419. Dr. Daniels terminated treatment and the doctor-patient relationship in April 2018.

In July 2018, FCA contacted Kreszowski to inform him his medical certification had been valid only through May 1, 2018, and since then he had been absent without medical substantiation. FCA sent a list of potential physicians and resources, and it directed him to make an appointment by the end of the month in order to continue his sickness and accident benefits. Kreszowski made an appointment to be evaluated at Harbor Behavioral Health ("Harbor") and submitted details of the appointment to FCA. Because he provided details of the upcoming appointment to FCA, his sickness and accident benefits were reinstated and paid through August 13, 2018. Kreszowski attended the intake assessment at Harbor but informed them that he did not want treatment. Kreszowski did not submit his Harbor assessment to FCA. He submitted no documentation stating he was able to return to work in compliance with the fitness examination, nor did he provide documentation by a licensed psychiatrist to substantiate continued entitlement to benefits under FCA's sickness and accident plan. He did not submit any substantiation for his absence to FCA after July 25, 2018.

On October 22, 2018, Kreszowski filed his third OCRC complaint against FCA alleging disability discrimination and retaliation. He asserted that FCA "would not accept Harbor Health's diagnostic and assessment that there was no need for future psychiatric services." 3:19-cv-2989, DE 1-1, OCRC 2018 Charge, Page ID 13.

Kreszowski did not return to work at FCA, and on March 18, 2019, FCA sent Kreszowski a letter explaining that he had been absent from work since October 27, 2017, and the reason for his absence no longer had current justification. The letter from FCA is known as a "five-day letter" requiring "satisfactory evidence as to the reason for your absence" pursuant to the collective bargaining agreement. 3:19-cv-2989, DE 16-8, Price Decl., Page ID 103. For an employee to provide satisfactory evidence, he must submit a dated medical statement signed by his physician that details a statement of the disability, the diagnosis, the dates of treatment, and the physician's contact information. FCA offers a form to employees that includes a list of all required information. On March 22, 2019, within the five-day period specified by FCA's letter, Kreszowski appeared at FCA's employment office with the assessment from Harbor. Kreszowski made multiple phone calls that morning to various FCA employees and Union members to attempt to present medical records. Larry Price and Mark Epley met Kreszowski at the employment office window; Price rejected the offered medical records and Kreszowski was asked to leave the property. Price reviewed the Harbor assessment and determined that it did not contain the information required for an employee to be reinstated and would not be accepted as satisfactory evidence as to the reason for Kreszowski's absence.

On March 26, 2019, FCA sent Kreszowski a letter stating that "[a]s a result of [his] failure to return to work when called, as instructed in our previous letter, [his] seniority is terminated as of 03/25/2019." 3:19-cv-2989, DE 16-8, Price Decl., Page ID 109. The letter explained the reason

for termination was because FCA did not receive satisfactory evidence as to the reason for Kreszowski's absence.

Kreszowski sued FCA and the Union in November 2017, alleging unlawful termination, disability discrimination, and retaliation in violation of federal and state law. In July 2019, the Union and FCA moved for summary judgment. The district court held Kreszowski did not establish a prima facie case of disability discrimination by either FCA or the Union. The district court also rejected Kreszowski's claim that FCA retaliated against him, holding that Kreszowski could not establish a causal connection between his protected activity and the purported adverse actions. The court granted FCA's and the Union's motions for summary judgment.

Kreszowski sued FCA again in December 2019, alleging unlawful termination, disability discrimination, and retaliation in violation of federal and state law. In June 2020, FCA moved for summary judgment. Kreszowski then filed a motion pursuant to Federal Rule of Civil Procedure 56(d) requesting a continuance to conduct discovery before the court ruled on the motion for summary judgment. The district court denied Kreszowski's motion.[5] The court granted FCA's summary judgment motion in July 2021, finding that Kreszowski did not establish a prima facie case of disability discrimination by FCA. The court also rejected Kreszowski's retaliation claim, holding that Kreszowski could not establish a causal connection between his protected activity and the purported adverse actions. Kreszowski appeals the district court's denial of his discovery motion and its grants of summary judgment to FCA and the Union.

---

[5] Kreszowski filed three lawsuits against FCA, in 2017, 2019, and 2020. He named the Union as a defendant in the 2017 and 2020 cases, but not in the 2019 case. The 2017 and 2019 cases were ultimately consolidated. In its order denying Kreszowski's motion for a continuance, the district court also granted FCA's Rule 12(b)(6) motion to dismiss in the 2020 case. This did not affect FCA's motion for summary judgment in the 2019 case.

## II

We review a district court's grant of summary judgment de novo. *Equitable Life Assurance Soc'y of the United States v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). Summary judgment for FCA and the Union is appropriate if, after drawing all reasonable inferences in favor of Kreszowski, "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A genuine issue of material fact exists when there are 'disputes over facts that might affect the outcome of the suit under the governing law.'" *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252.

We review "a district court's decision on a Rule 56(d) motion for discovery for an 'abuse of discretion.'" *Doe v. City of Memphis*, 928 F.3d 481, 486 (6th Cir. 2019) (quoting *In re Bayer Healthcare & Merial Ltd. Flea Control Prods. Mktg. & Sales Practices Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014)). An abuse of discretion occurs when we are "left with the definite and firm conviction that the trial court committed a clear error of judgment." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (quoting *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008)). To reverse, we must find that the district court's "ruling was arbitrary, unjustifiable, or clearly unreasonable." *Id.*

## III

In both his 2017 and 2019 cases, Kreszowski alleges disability discrimination under the Americans with Disabilities Act ("ADA") and Ohio's Revised Code, which prohibit an employer

from discriminating on the basis of disability. 42 U.S.C. § 12112(a); Ohio Rev. Code Ann. § 4112.02. Pursuant to the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a). Ohio law similarly prohibits "any employer, because of the . . . disability . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code Ann. § 4112.02(A). As the statutes are similar, we "consider the ADA and state law claims simultaneously by looking to the cases and regulations that interpret the ADA." *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1104 n.3 (6th Cir. 2008).

Under the ADA, in the absence of direct evidence of disability discrimination, a plaintiff may establish a prima facie case of discrimination through indirect evidence. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). Once established, the familiar *McDonnell Douglas* framework shifts the burden to the defendants to offer a "legitimate, nondiscriminatory reason" for its action. *Id.*; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendants articulate such a reason, the plaintiff must show that the reason given is pretext for discrimination in order to prevail. *Sullivan*, 197 F.3d at 810.

**A**

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that he (1) is "a disabled person within the meaning of the Act"; (2) is "otherwise qualified to perform the essential functions of his job with or without reasonable accommodation"; and (3) "suffered an adverse employment decision due to his disability." *Sullivan*, 197 F.3d at 810.

An individual is considered "disabled" under the ADA if he (1) "has a physical or mental impairment that substantially limits one or more" of his major life activities; (2) "has a record of such impairment," or (3) "is regarded by [his] employer as having such an impairment." *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008) (quoting *Sullivan*, 197 F.3d at 810). Accordingly, an employee may be "regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001).

## 1

Kreszowski argues he has presented sufficient evidence to establish a prima facie case of discrimination. The district court disagreed, finding he had not established that FCA regarded him as disabled. On appeal, Kreszowski argues that the required medical examinations show FCA regarded him as disabled.

Under the ADA, an employer is permitted to require medical examination only when it is "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). We have recognized that, because employers must "be able to determine the cause of an employee's aberrant behavior," requesting an employee to undergo a fitness for duty examination "is not tantamount to regarding that employee as disabled." *Sullivan*, 197 F.3d at 810. Requesting an employee obtain a medical examination cannot, by itself, prove perception of a disability. *Id.* Further, an examination ordered for valid reasons is not an adverse job action and does not prove discrimination. *Id.* at 813; *see also Pena v. City of Flushing*, 651 F. App'x 415, 422 (6th Cir. 2016). A medical examination is job-related and consistent with business necessity when: "(1) the employee requests an accommodation; (2) the employee's ability to perform the essential

functions of the job is impaired; or (3) the employee poses a direct threat to himself or others." *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (quoting *Denman v. Davey Tree Expert Co.*, 266 F. App'x 377, 379 (6th Cir. 2007)).

Kreszowski argues none of these valid reasons apply here. He asserts his behavior was "not indicative of a threat to the safety of himself, or any others at the workplace." 21-3730, CA6 R. 17, Appellant Br., at 22. But the record contains significant evidence to support that both the 2016 and 2017 fitness examinations were job-related and consistent with business necessity. For example, after the October 10, 2016 meeting, although FCA management said Kreszowski could return to work, he informed the LRT that he was not confident about returning to the workplace. Kreszowski indicated he was in a detrimental emotional state and had concerns about his health and safety at work. He felt that his supervisor and coworkers were coordinating against him and were likely to do so again in the future. After the October 2016 meetings, in which Kreszowski stated he might not take otherwise-appropriate safety actions in fear of discipline, which might result in harm to himself or coworkers, members of the LRT were concerned he could threaten workplace safety.

Kreszowski's behavior is similar to other situations in which we have found a medical examination to be appropriately job-related and consistent with business necessity. In *Barnum v. Ohio State University Medical Center*, 642 F. App'x 525 (6th Cir. 2016), an employer required a psychological evaluation after an employee made concerning comments and appeared unable to concentrate on relatively straightforward routine job tasks. *Id.* at 527–28. We held that the employer did not regard the employee as disabled, despite ordering the medical examination, because the request was job-related and consistent with business necessity. *Id.* at 532–33. Because there were "numerous concerns expressed about [the employee's] inability to concentrate and at

least one instance where she could not perform a routine task," there was "significant evidence that would cause a reasonable person to inquire whether the employee is still capable of performing her job." *Id.* (citing *Sullivan*, 197 F.3d at 808, 812–13). Similarly, even viewing the facts in the light most favorable to Kreszowski, his behavior warranted an inquiry about his capability to perform his job. During the course of multiple meetings, the LRT observed Kreszowski in an upset state, using an escalated tone and expressing concerns about his ability to safely return to work. In light of Kreszowski's behavior and the LRT's reasonable concerns, the 2016 request for a fitness-for-duty examination was job-related and consistent with business necessity.

While on leave, Kreszowski sent a multitude of text messages and emails that reasonably prompted further concerns about whether he was able to perform his job. In *Brown v. Lexington-Fayette Urban County Government*, 549 F. App'x 366 (6th Cir. 2013), an employee sent emails regarding her mental state and work to various coworkers and supervisors that "devolved from coherent, if somewhat odd," to concerning. *Id.* at 368. We held that the employer's decision "to refer [the employee] for a fitness-for-duty assessment that led to her being placed on leave was legitimate and non-retaliatory given the tone and substance" of her emails. *Id.* at 370. The tone, substance, and frequency of Kreszowski's emails to local and corporate FCA employees similarly were sufficient to warrant the 2017 request for a second fitness-for-duty examination. For example, Kreszowski sent an email to eighteen FCA employees, including Rubin, Richie, Patterson, and Epley, on October 24, 2017, in which he complained about a pay-raise issue "due to the abusive and adverse conditions that I am experiencing with Human Resource Management within FCA." 3:17-cv-2371, DE 49-22, Kreszowski Emails, Page ID 466. Kreszowski continued that the issue was "[c]learly absolutely 100 percent retaliatory, hostile, abusive actions are occurring against me at this moment in time and prior to this latest event." *Id.* He ended his email:

"I declare 'CEASE TREATING ME IN THIS MANNER THAT CAUSES HARM AND DAMAGES THAT INCLUDE FINANCIAL HARM AND EMOTION[AL] DISTRESS THAT HAS NO PURPOSE EXCEPT SPECIFICALLY CAUSING HARM WITH INTENT TOWARDS ME WHICH CAUSES THAT HARM AND DAMAGE TO OCCUR.'" *Id.* (emphasis in original). This email was one of dozens received by FCA employees. Consistent with *Brown*, here too Kreszowski's email correspondences sufficiently prompted FCA's 2017 request for a fitness-for-duty examination as job-related and consistent with business necessity.

Even viewing the facts in the light most favorable to Kreszowski, FCA's 2016 and 2017 requests for a medical evaluation were job-related and consistent with business necessity under the ADA. Further, FCA's request that Kreszowski obtain a fitness-for-duty examination does not itself prove a perception of disability. *Sullivan*, 197 F.3d at 810; *see also Johnson v. Univ. Hosps. Physician Servs.*, 617 F. App'x 487, 491 (6th Cir. 2015) (noting that deteriorating employee performance could be unrelated to disability and instead linked to motivation or other reasons).

Kreszowski failed to present any other evidence that FCA regarded him as disabled. We affirm the district court's holding that Kreszowski did not establish a prima facie case of disability discrimination at to FCA and therefore FCA is entitled to summary judgment.[6]

**2**

Kreszowski argues "[t]he Union perceived him as disabled when it did not object to FCA's decision to require a fitness-for-duty exam" in 2016 and when it failed to file a grievance regarding

---

[6] FCA also argues there was no adverse employment action because of a perceived disability. The district court found that Kreszowski faced an adverse employment action. We need not reach this issue because Kreszowski failed to establish that he was regarded as disabled by FCA.

Kreszowski's issues with FCA's payment to him during his leave of absence.[7]  21-3730, CA6 R. 17, Appellant Br., at 25.

The Union asserts it did not object to FCA's request that Kreszowski submit to a medical examination because "FCA was within its established right" to make such a request.  21-3730, CA6 R. 20, Union Br., at 27.  The Union states that "Kreszowski's demeanor, his own words, and his continued requests for more time off, gave the employer and the Local Response Team cause to send [him] for a fitness-for-duty examination [and the Union] had no basis to object to the request as being fully within FCA's established rights."  *Id.* at 30.  As discussed above, FCA's 2016 request for a psychological evaluation was "job-related and consistent with business necessity" under the ADA.  Therefore, the Union's failure to object is not evidence that the Union perceived him as disabled.

Kreszowski also argues that Union representative and LRT member Epley commented that Kreszowski needed to "get better and follow the doctor's instructions," which he asserts is proof the Union regarded him as disabled.  21-3730, CA6 R. 17, Appellant Br., at 25.  But a "perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled."  *Sullivan*, 197 F.3d at 810.  Kreszowski asserts the Union's failure to object could not have been because they perceived him to have a health problem, rather than a disability, because "there was no health problem (as opined by two medical professionals)."  21-3730, CA6 R. 17, Appellant Br., at 25–26.  But that reasoning is circular: without the requested medical evaluations, the Union did not know the source of Kreszowski's aberrant behavior.

Kreszowski next argues the Union perceived him as disabled when it failed to file a

---

[7] A prima facie case of discrimination on the basis of a perceived disability does not require Kreszowski to demonstrate that the Union breached its duty of fair representation. *Peeples v. City of Detroit*, 891 F.3d 622, 638 (6th Cir. 2018).

grievance regarding FCA's failure to pay him overtime pay or make 401(k) contributions during his leave of absence. However, Kreszowski never requested that the Union file a grievance on either of these matters. The Union argues that it "vigorously advocate[d] on Kreszowski's behalf," including by successfully having FCA void the discipline for the September 30, 2016 incident; assisting him in obtaining requested time off; saving him from negative attendance points; and obtaining hours of pay while he was away from work. 21-3730, CA6 R. 20, Union Br., at 32–33. In light of the Union's actions on Kreszowski's behalf and Kreszowski's failure to request the Union file a grievance regarding pay, Kreszowski failed to provide sufficient evidence for a reasonable juror to find that the Union regarded Kreszowski as disabled. We affirm the district court's holding that the Union is entitled to summary judgment on Kreszowski's discrimination claims.

Kreszowski does not identify any additional evidence in his 2019 case alleging disability discrimination beyond the assertions in his 2017 case. His repetition of the same arguments from the earlier case must fail here. Kreszowski has identified no evidence to support his latest allegation that FCA regarded him as disabled and therefore the district court appropriately held that Kreszowski did not establish a prima facie case of disability discrimination by FCA. We affirm. And "[b]ecause [Kreszowski] has not established a prima facie case of . . . discrimination, under the *McDonnell Douglas* burden shifting procedure the court's analysis is over and there is no need to address the question of pretext." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048 (6th Cir. 1998).

**B**

Kreszowski argues the district court erred in both cases by holding that he did not establish a prima facie case of retaliation. Kreszowski alleged intentional retaliation in violation of Title

VII of the Civil Rights Act and Ohio law. 42 U.S.C. § 2000e; Ohio Rev. Code Ann. § 4112.02. Both statutes protect employees from retaliation after opposing an employer's unlawful actions. 42 U.S.C. § 2000e-3(a); Ohio Rev. Code Ann. § 4112.02(I). The federal and state law claims are analyzed under the same framework. *See Smith v. City of Toledo, Ohio*, 13 F.4th 508, 514 (6th Cir. 2021). Without direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework governs claims of retaliation. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). To establish a prima facie case of retaliation, Kreszowski must show "(1) that [he] engaged in a protected activity; (2) that the defendant had knowledge of [his] protected conduct; (3) that the defendant took an adverse employment action towards [him]; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Id.* (citation omitted).

Protected activity under Title VII includes "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; [and] refusing to obey an order because the worker thinks it is unlawful under Title VII." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344–45 (6th Cir. 2021) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008)). Title VII protects "not only the filing of formal discrimination charges with the EEOC, but also . . . less formal protests of discriminatory employment practices." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Kreszowski complained frequently about perceived safety issues to management in FCA and the Union. However, these complaints did not allege any potential violation of Title VII.

In his 2017 case, the only complaint in the record that meets the standard of Title VII protected activity is Kreszowski's 2016 OCRC charge, in which he alleged that FCA discriminated against him because of a perceived disability by disciplining him and subjecting him to different

employment terms and conditions by giving him a "forced personal leave of absence" and a "denial of medical leave." 3:17-cv-2371, DE 49-4, OCRC Charge, Page ID 252. The district court acknowledged that Kreszowski's 2016 OCRC charge constituted protected activity. However, it found that Kreszowski had not established a causal connection between the protected activity (filing the 2016 OCRC charge) and the alleged adverse employment action (the October 2017 fitness-for-duty examination request and "forced leave").

In his 2019 case, the complaint in the record that meets the standard of Title VII protected activity is Kreszowski's 2018 OCRC charge, in which he alleged that FCA discriminated against him because of a perceived disability by denying approval for him to return to work and requiring him to attend a psychiatry appointment. 3:19-cv-2989, DE 1-1, OCRC 2018 Charge, Page ID 13. The district court again acknowledged that Kreszowski's 2018 OCRC charge constituted protected activity. It found again that Kreszowski had not established a causal connection between the protected activity and the alleged adverse employment action.

To establish the causal prong of a prima facie Title VII retaliation claim, courts use the "traditional principles of but-for causation," which "require[] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Laster*, 746 F.3d at 731 (citation omitted). This court has "rarely found a retaliatory motive based only on temporal proximity." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). In *Vereecke*, this court referred to a passage of eight months between incidents as "little more than coincidence, which is insufficient on its own to show causation." *Id.*

Kreszowski argues that the "timing of the two events" is proof of a causal connection between his October 2016 OCRC charge and the 2017 fitness-for-duty examination request. 21-3730, CA6 R. 17, Appellant Br., at 31. Although a year passed between these events,

Kreszowski contends that "during those months, [he] was continually complaining about the discrimination and retaliation he suffered." *Id.* Therefore, he argues, "[a] reasonable person could determine that FCA was tired of [his] complaints about the discrimination and retaliation [he] suffered from, and thus decided to keep him off work as a result." *Id.* at 32. However, there is no indication that *but for* the filing of the OCRC complaint, FCA would not have requested a second psychological evaluation. Rather, the record shows that Kreszowski sent a large volume of concerning emails throughout the spring and fall of 2017 and had a fraught meeting with labor relations manager Richie on October 16, 2017. Following this meeting, where Kreszowski stated he believed FCA employees and Union members had "evil intentions" toward him, Richie determined that Kreszowski could not return to work until he completed a fitness examination. 3:17-cv-2371, DE 49, Kreszowski Dep., Page ID 225. Kreszowski has not presented evidence from which one could infer that FCA only subjected him to this requirement because of his engagement in protected activity. Because Kreszowski could not establish a causal connection between his protected activity and the alleged adverse action, the district court properly held he had not established a prima facie case of retaliation.

Similarly, the five months between his October 2018 OCRC charge and the March 2019 termination of his seniority is "little more than coincidence, which is insufficient on its own to show causation." *Vereecke*, 609 F.3d at 401. There is again no indication that *but for* the filing of the OCRC complaint, FCA would have maintained Kreszowski's seniority. Rather, the record indicates that FCA's reinstatement process requires employees to submit medical documents signed by a physician. Here, the Harbor assessment that Kreszowski relied upon did not satisfy FCA's stated requirements. Because Kreszowski did not establish a causal connection between

his protected activity and the alleged adverse action, the district court properly held he had not established a prima facie case of retaliation.

**C**

Finally, Kreszowski asserts that the district court improperly denied his Rule 56 motion for a continuance to conduct discovery in his 2019 case. To determine whether a district court abused its discretion in granting or denying a Rule 56 motion, applicable factors include:

> (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

*CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (citation omitted). When parties have not had an opportunity for discovery, it is likely an abuse of discretion to deny a Rule 56(f) motion and rule on a summary judgment motion. *Id.* (citing *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)). This circuit has "affirmed the denial of Rule 56(f) motions when the parties were given insufficient time for discovery if 'further discovery would not have changed the legal and factual deficiencies.'" *Id.* (quoting *Maki v. Laakko*, 88 F.3d 361, 367 (6th Cir. 1996)); *see also Allen v. Collins*, 529 F. App'x 576, 584 (6th Cir. 2013).

In his motion for a discovery continuance, Kreszowski sought to depose witnesses and conduct discovery on the following topics: (1) his sickness and accident benefits; (2) Dr. Daniels's medical evaluation; (3) his attempt to provide medical evidence to FCA on March 22, 2019; (4) Harbor's assessment not identifying a disability; (5) Price's refusal to accept the Harbor evaluation; and (6) his appearance at the employment office on March 22, 2019. The district court noted that while no discovery had yet occurred in the 2019 case, there was a unique posture because "the 2019 case was filed on the heels of a full discovery period in the 2017 case" and Kreszowski

had the same theories of recovery. 3:19-cv-2989, DE 23, Order, Page ID 166. The court held that the topics Kreszowski identified as needing further discovery "reflect[ed] the limited universe of events not covered by discovery in the 2017 case." *Id.* However, the court went through each of the six topics and determined that either Kreszowski already possessed relevant documents and had the necessary facts, or he did not show that additional discovery could affect the issues.

The district court's denial of additional discovery came after Kreszowski had "a full opportunity to conduct discovery" in his 2017 case, which was consolidated with his 2019 case. *Ball*, 385 F.3d at 719. Although this case involves developments after the events in his 2017 complaint, the topics Kreszowski identified as needing further discovery did not identify a genuine issue of material fact precluding summary judgment. *See CenTra*, 538 F.3d at 420–21. This is not akin to a case in which there has been no opportunity for any discovery, such that denial of a Rule 56 motion would be an abuse of discretion. *E.g., Thomason v. Amalgamated Loc. No. 863*, 438 F. App'x 358, 361 (6th Cir. 2011) (in which "the district court permitted no discovery whatsoever"); *Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996) (same). The district court's ruling was not arbitrary, unjustifiable, or clearly unreasonable. *E.M.A. Nationwide*, 767 F.3d at 623. Therefore, we affirm the denial of Kreszowski's Rule 56(d) motion.

**IV**

We affirm the district court in full in both the 2017 and 2019 cases.